OriNiow or the Court.
THE trustees of Louisville, injthmi ear 1733, convi^-ed a lot in said town to BackneePi'ifBan. _ In the year 17.84, William Johnson set dp!a dáifíito thé'lot, and sold and conveyed it, with general warranty, to Benjamin Roberts and Samuel Orr. SR<A|rts, by a 'desd^bearing date in, 17,88, conveyed, the-s^oe to Peter Tardeygdm Some years afterwards^ ¡.B.éni^piin Johnson; father ,($f said William, departed- .^having posggafvan, of said lot, and claiming- it under ¡iífé^tíé conveyed 'by his son, William,'as aforesaid, soj^ff^háiteyef title! he bad, descended to his childrerú; who,' incl'udiagjsaid William Johnson, were eight itriramber. S8me-jiefyfc after his death, in 1791, These heirs divided his estáte into lots or parcels, andriía’de a ‘división thereof and reduced it to writing; and in that division'tiW included the aforesaid lot in Louisville^ which, by the ^tfSti|$ewt.> ■ came to General W. Johnson, orte of the &ods,.«$i3>d"ftfe-ry Anne Harrison, a daughter, then the wife of John Harrison, and shortly thereafter the said General W. Johnson, conveyed his moiety, for a valuable consideration, to said John Harrison; so that Harrison and his wife claimed the title to said lot, whatever it might he, derived from the said Benjamin Johnson. In the year 1810, Buckner Pittman, who, for many years had been absent from the state, claiming still his title to the lot, as derived from the trustees of the town, sold and conveyed it to James Noble Wood, who, in the year 1812, sold and conveyed the same to Samuel N. Luckett, who ini- *287 mediately- asi is claim thereto. John Harrison and his wife then filed this bill, alleging that Bucknfej^ Pittman, in the year 1785, sold the lot to said William, Johnson, and by an assignment written on the deed from the trustees of Louisville, passed the’Jot to said William Johnson, engaging by said assignment; to make any further conveyance that might be necessary; and that, after the said William Johnson had conveyed it to Roberts arid Orr, and Roberts to Tardeveau, as above r e 1 a t e d; Tajd e y e a u had conveyed the same to Daniel Broadhead, aniPBroadhead had conveyed it to said Benjamin Johnson,'inhis life time; but that these last conveyances were not recorded, and were now in possession of John Collins and wife and James'C. Johnson, the devisees of said William Johnson, he having departed this life. They then make these devisees defendants, and pray that they may be compelled to exhibit ah’d file these deeds. ’ They charge, that James N.. Wood and Samuel N. Ludkett had full knowledge and notice of the assignment by Pittman to William Johnson, and their claim thereto, before their respective purchases, and they make them defendants, and pray that they’ may be compelled to convey their title to them. They also, make'tíre,remaining heirs ofBenja-mm Johnspndefeh3|nt|, — that the division between them, is inffir^fcand^nox valid in law; but that it has affrays, b%‘en'*á|mescédt'in, by the parties, and they pray a cphfirMaftion of it and a completion of thei? title. On the contrary, if it should turn out, that the assignment from Buckner Pittman, to William Johnson, could not he properly established, and his claim to said lot should not be a good one, or should prove, to be fraudulent, that then the devisees of said William Johnson might be compelled to pay the value of .said lot, and such damages as they may sustain by the loss thereof, and they conclude with a prayer for general relief. Pittman, Wood and Luckett answered denying flatly the genuineness of the assignment on ' 14 original deed from Pittman to the trustees, and a-knowledge thereof. Wood and Bucket contend t they are innocent purchasers for a valuable consideration, if the assignment is genuine. The cause as to these three defendants was first tried without including the other defendants in the same trial, and a de-
4’he question ■whether extinction of a covenant of warranty and loss of legal remedy in consequence, would give .’jurisdiction to a court of equity, discussed, but not decided.
cree was rendered dismissing the bill as to them tv tilt costs.
As this decree was rendered several terms before the cau-sd was finally disposed of, and no writ of error is prosecuted to reverse it, however erroneous it may be, we cannot reach it on this writ.
General W. Johnson, one of the heirs of said Benjamin, answered, admitting the partition and that it always had been acquiesced in, and he prays a confirmation thereof, and acknowledges that he had conveyed his moiety of the lot in question, to the complainant John Harrison. James C. Johnson answered and declared himself ignorant of all these transactions. He denies having any knowledge of any title papers which, he was required to disclose, except a copy of the assignment from Buckner Pittman, to his testator, WillJ iam Johnson, and an instrument of writing from Daniel Broadhead to Benjamin Johnson, dated in 1790, which acknowledges a receipt of the lull value of the lot; states that he had purchased it of Tardeveau, and that he had Tardeveau’s written agreement to oblige him to convey or procure a conveyance from Benj. Roberts, which writing was mislaid. But he assigns the same to said Benjamin Johnson, and desired a conveyance might be made to him instead oí, to Broadhead himself. None of the other defendants answered, and the court at the hearing dismissed the bill as to the whole, without prejudice to any action at law, which might be brought against the devisees of the said William Johnson. To reverse this decree the complainants below have prosecuted this writ of error.
1. If it was shewn that the warranty of William Johnson had been regularly conveyed and transferred to his father, Benjamin Johnson, before his death, we incline to the opinion, notwithstanding such assignees in geueral can maintain an action at law as the proper remedy for a breach of the warranty, that still the jurisdiction of a court of equity could be sustained in this case for the purpose of making the devisees of William Johnson responsible. For on the death of said Benjamin and the descent thereupon to his children, of whfcii ‘ .William Johnson was one, the warranty must have bee come in fact extinct, or no action at law could be maintained thereon by one or more of his co-heirs, and the partition in this case between said heirs, appears to be *289 ,»t an equitable character, and not sufficient to sever the legal estate and vest the whole warranty in Harrison and wife, even if a legal division could so vest the benefit of the warranty, and make Harrison and wife'Hom-jdete assignees thereof,-which is a question not free from difficulty. Besides, as it turned out that there was no conveyance from Broadhead to Benjamin Johnson; but only an instrument of writing passing an equity only, .which equity was transferred by the division and subsequent conveyance of General W. Johnson to them, their right in equity would be complete for the .value, in case of the loss of the land.
The positive answer oíone^' defendant int chancery, cannot be evidence against another defendant, much less can the inference drawn from his not answering at all, be evidence of the allegations ol the complainant’s bill, as against another defendant.
2. But there is a defect in proof, which is an insuperable bar to any relief on this ground. There isno conveyance or sale, either legal or equitable, from Orrto Tar-deveau for one half the' lot, and none of any kind shewn or proved from Tardeveau to Broadhead. So thatas the cause now stands, neither Harrison and wife, nor even their anees for or Broadhead, are, or were entitled to the warranty of W. Johnson. And as to them his warranty is still outstanding, part in Orrand the remainder in Tar-deveau. Orr is not made a party; and although both Tardeveau and Broadhead are made parties, and after publication against them as non-residents, the bill is taken as confessed; yet this confession cannot operate against James C. Johnson, who has required proof of all these things in his answer, if Tardeveau and Broad-head had both answered and confessed the statement of the bill, their answers could not have been used against James C. Johnson; much less, then, can the inference drawn from their silence, be used against him. On the warranty then of William Johnson,the complainants have shewn themselves entitled to no redress.
Still, however, as the warranty of William Johnson remained in the hands of a stranger, and he has divided the estate with his brothers and sisters, it maybe contended that he is nevertheless liable,as fraud appears in the division. To this it maybe responded that the hill is not framed to reach the case of a re-division and contribution, and the contract of partition stipulates - against any contribution. The representatives of William Johnson could then he liable for fraud only, under ibis bill; and the cause of suit or complaint, if any exists, could only be against the personal representatives, who are not made parlies to this controversy. For at the daté * *290 of this partition, the effect of a broken contract could not reach the devisee or heir, unless the heir was expressly bound; much less would a .tort or fraud only-
The decree of the circuit court, therefore, must be affirmed with costs.